### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

```
UNITED STATES OF AMERICA        :
                                :
                                :
                                :      Case no. 2:08-cr-117
              v.                :
                                :
MICHAEL JACQUES,                :
                                :
              Defendant.        :
```

### OPINION and ORDER Re: Defendant's Motion to Reconsider Point Eight in Favor of Striking the Notice of Intent to Seek the Death Penalty

Defendant Michael Jacques has moved for reconsideration of the Court's ruling denying his motion to strike the notice of intent to seek the death penalty based on the argument presented in Point Eight of his brief in support of the motion to strike. Mot. to Reconsider, ECF No. 290.  In Point Eight, Jacques briefly presented an argument that imposition of the federal death penalty is unconstitutional in a state, such as Vermont, that does not authorize capital punishment as a matter of state law. Mot. to Strike , ECF No. 146.  Familiarity with the underlying Opinion and Order, which describes the factual and procedural background of this case, is assumed.  *See* Op. and Order Re: Def.'s Mot. to Strike, ECF No. 279.  For the reasons that follow, the motion to reconsider is **denied.**

It is well settled that "[t]he standard for granting a motion to reconsider is strict, and reconsideration will

generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "'Motions for reconsideration must be narrowly construed and the standard strictly applied to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court, to ensure finality, and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters.'" *Lewis v. Rosenfeld*, 145 F. Supp. 2d 341, 343 (S.D.N.Y. 2001) (quoting *Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 130 F. Supp. 2d 440, 443 (S.D.N.Y. 2000)).  However, a motion for reconsideration should be granted where "it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *Walker v. Teachers Ins. & Annuity Ass'n of American Coll.*, No. 1:09-CV-190, 2010 U.S. Dist. LEXIS 78604, at *5 (D. Vt. Aug. 4, 2010) (quoting *Hester Indus., Inc. v. Tyson Foods, Inc.,* 160 F.R.D. 15, 16 (N.D.N.Y. 1995)).

In Point Eight, a one-paragraph section of his motion to strike the notice of intent to seek the death penalty, Jacques adopted by reference arguments from a law review article that asserts that the federal government may not proceed with a capital prosecution in a state, such as Vermont, that does not

2

authorize capital punishment as a matter of state law.  Def.'s
Mot. to Strike 169 (citing M. Mannheimer, *When the Federal Death
Penalty is "Cruel and Unusual,"* 74 U. Cin. L. Rev. 819 (2006)).
The Court declined to strike the notice of intent on the basis of
this argument, finding that, based upon the single paragraph
dedicated to it, Jacques had failed to meet "[his] burden of
proving the [Federal Death Penalty Act] is unconstitutional."
Op. and Order Re: Def.'s Mot. to Strike 43 (quoting *United States
v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007)).[1]  The Court noted,
however, that in light of the differing viewpoints discussed in
Judge Raggi's concurrence and Judge Calabresi's dissent in *United
States v. Fell III*, the federalism question raised in the
Mannheimer article did not appear to be explicitly foreclosed by
Second Circuit precedent.  571 F.3d 264 (2d Cir. 2009) (en banc)
(denying defendant's petition for rehearing en banc on several
claims, including a Sixth Amendment claim based on the exclusion
during voir dire of certain prospective jurors who expressed
reservations about the death penalty).

     In his briefing on the motion to reconsider, Jacques has
provided the Court with a thorough treatment of the federalism
argument and the Government has, in turn, fleshed out its

---

[1] Notably, the Government indicated that, because of the
brevity of Jacques' presentation of this argument, it had elected
"not to address every point in the article" in its opposition to
the motion.  Opp'n to Mot. to Strike 85.

opposition to the argument.  Accordingly, the Court is now in a
better position to assess the merits of the argument and
determine whether denying the Defendant's motion to strike the
notice of intent on these grounds was "a clear error of law."
*Walker*, 2010 U.S. Dist. LEXIS 78604, at *5.

In his motion to reconsider, Jacques argues that imposition
of the federal death penalty for a traditionally state-law
offense, such as kidnapping, in a state that does not authorize
the death penalty under its own laws violates the Eighth and
Tenth Amendments.  He explains that "[t]his argument follows from
the widespread recognition that at its core the ban on cruel and
unusual punishment operates as a prohibition on punishments not
authorized by law."  Mot. to Reconsider 3 (citing Mannheimer,
*Federal Death Penalty*, *supra*, at 837; *Harmelin v. Michigan*, 501
U.S. 957, 974 (1991) (noting in its discussion of the 1689
English Declaration of Rights, after which the Eighth Amendment
was patterned, that "in the context of restricting punishment
determined by the Crown (or the Crown's judges), 'illegall' and
'unusuall' were identical for practical purposes.")).  He posits
that, because the death penalty is not authorized under Vermont
state law, imposition of capital punishment in this state is
"illegal" and therefore "'unusual' in the constitutional sense."
*Id*. at 6.  He suggests that imposition of the death penalty for
an offense such as kidnapping is especially problematic because

"the federalization of state-law offenses" and "corresponding increase in the penalty beyond what is possible [under] state law" violate the Tenth Amendment. *Id*. at 7-8. He argues that reading the Eighth and Tenth Amendments to prohibit imposition of the death penalty in his case would effectuate the original intent of the framers because, along with establishing individual rights, one of the central purposes of the Bill of Rights was to prevent federal encroachment on state sovereignty and local values.

To the extent that Jacques argues that Congress' "federalization" of the offense of kidnapping violates the Tenth Amendment, that argument fails for the reasons discussed in the Court's prior opinion denying his motion to dismiss Count 1 of the indictment. Op. and Order Re: Def.'s Mot. to Dismiss Count 1, ECF No. 280. In that opinion, the Court held that the federal kidnapping statute "is an unremarkable and facially valid exercise of Congress's long-established power to regulate the channels and instrumentalities of interstate commerce under the Commerce Clause, regardless of whether the underlying conduct is also amenable to proscription under a state's police power." *Id*. at 26. Under the Tenth Amendment, "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." Here, because the federal government is acting within

its constitutionally delegated power under the Commerce Clause, there is no violation of the Tenth Amendment.

Moreover, a Tenth Amendment violation does not arise simply because the United States government, by virtue of federal legislation, has chosen to make the death penalty applicable for federal crimes even in states that do not authorize capital punishment under state law.  As the United States District Court for the District of Hawaii recently commented in rejecting a Tenth Amendment challenge to imposition of the federal death penalty in that state, which also does not authorize capital punishment,

> [Defendant's] argument is based on the flawed premise that the federal government does not have the power under the United States Constitution to try and sentence crimes against the United States.  This is simply untrue.  Sentencing Defendant according to federal law for a federal crime neither violates [] State sovereignty nor the Tenth Amendment, under the doctrine of dual sovereignty.

*United States v. Tuck Chong*, 123 F. Supp. 2d 563, 567 (D. Haw. 1999) (citing *United States v. Davis*, 906 F.2d 829 (2nd Cir. 1990)).  In *Davis*, the Second Circuit described the principle of dual sovereignty as follows:

> Th[e] doctrine [of dual sovereignty] rests upon the basic structure of our polity. The states and the national government are distinct political communities, drawing their separate sovereign power from different sources, each from the organic law that established it.  Each has the power, inherent

6

> in any sovereign, independently to determine
> what shall be an offense against its
> authority and to punish such offenses.

906 F.2d at 832.  Accordingly, consistent with the Tenth
Amendment and the doctrine of dual sovereignty, "[t]he federal
government may, independent of the State of [Vermont], determine
the appropriate punishment for a crime against the United
States." *Tuck Chong*, 123 F. Supp. 2d at 567; *see also United
States v. O'Reilly*, No. 05-80025, 2007 U.S. Dist. LEXIS 62056
(E.D. Mich., Aug. 23, 2007) (Rejecting similar Tenth Amendment
claim and commenting "[w]hile Michigan is free to prohibit the
death penalty for state-charged crimes, this federal Court cannot
prohibit imposition of the death penalty when authorized by
federal law for federally-charged crimes[.]").  That the Tenth
Amendment does not prohibit the United States from prosecuting
defendants in federal court for crimes punishable by death under
federal statutes, even within states that do not authorize
capital punishment as a matter of state law, undercuts Jacques'
assertion that such prosecutions are "illegal" and therefore
"unusual" for Eighth Amendment purposes.

Furthermore, Jacques' proposal that courts apply a state-by-
state standard when evaluating Eighth Amendment claims against
the federal government lacks support in case law and would create
constitutional concerns more problematic than the one it purports
to address.  Jacques acknowledges that he is unable to cite any

7

case in which a court has applied a state-specific standard to determine whether a particular punishment is cruel and unusual under the Eighth Amendment.  However, he argues that "this view of the Eighth Amendment . . . has not yet been applied [] due in part to the fact that the vast majority of Eighth Amendment cases deal with the Eighth Amendment as incorporated against the states through the Fourteenth Amendment."  Mot. to Reconsider 6 (citing Mannheimer, *Federal Death Penalty*, *supra*, at 864).  He explains that because courts have often looked at the Bill of Rights through the lens of the Fourteenth Amendment, which was adopted in 1868 with the aim of protecting former slaves and other minorities from local majorities, a distortion in Eighth Amendment jurisprudence has taken hold.  *Id* at 6-7.  In particular, he argues, cases interpreting the Eighth Amendment have focused on protecting individuals against state or local actors rather than on preventing federal encroachment on state sovereignty and local values.  *Id.*

While Jacques' account of the evolution of Eighth Amendment jurisprudence is thought-provoking, even when one looks exclusively at Eighth Amendment cases challenging federal prosecutions, there is no precedent for applying a state-by-state standard for determining whether a punishment is cruel and unusual.  Rather, seemingly without exception, courts deciding Eighth Amendment claims against the federal government have

evaluated federal practices against a national standard.  *See,
e.g., United States v. Robinson*, 367 F.3d 278, 297 (5th Cir.
2004) (rejecting Defendant's argument that FDPA is
unconstitutional under Eighth Amendment in part because there is
"no reason to believe that there has emerged a *national consensus*
against capital punishment for defendants who commit crimes that
are as depraved as Robinson's" (emphasis added)); *United States
v. Sampson*, 275 F. Supp. 2d 49, 86 (D. Mass. 2003) (rejecting
Eighth Amendment challenge to the federal death penalty because
"the objective evidence is not now sufficient to demonstrate that
contemporary standards of decency have generated a *national
consensus* that the death penalty constitutes cruel and unusual
punishment because of the risk of executing the innocent"
(emphasis added)); *United States v. Cisneros*, 385 F. Supp. 2d
567, 570 (E.D. Va. 2005) (in complying with prohibition on the
execution of mentally retarded individuals set forth in *Atkins v.
Virginia*, 536 U.S. 304 (2002), federal courts must apply a
"definition [of mental retardation] embraced by a national
consensus").

As Judge Raggi observed in her *Fell III* concurrence,

> Although the Supreme Court has construed the
> Eighth Amendment to prohibit cruel and
> unusual punishment in accordance with
> "evolving standards of decency," . . . and
> considered "state practices" in identifying
> these standards, . . . it has done so only
> because in the aggregate such practices serve
> as a proxy for the "national consensus." . .

. The Eighth Amendment, no less than other provisions of the Constitution, must apply equally throughout the states. Nothing in the Court's jurisprudence has ever suggested that federalism warrants re-tailoring the Eighth Amendment in each state -- or each vicinage -- to test federal death sentences by reference to local practices.

571 F.3d at 274 (Raggi, J. concurring in the denial of rehearing en banc) (citing *Kennedy v. Louisiana*, 554 U.S. 407 (2008); *Roper v. Simmons*, 543 U.S. 551, 563 (2005); *Atkins*, 536 U.S. at 314-15). In short, the state-by-state standard advocated by Jacques represents a substantial departure from standing Eighth Amendment precedent.[2]

---

[2] More broadly speaking, a state-by-state standard for assessing Eighth Amendment claims against the federal government -- which would be distinct from the "national consensus" standard used to evaluate Eighth Amendment claims against state actors -- would represent a substantial departure from the mode of analysis employed by courts when interpreting other portions of the Bill of Rights. *See Benton v. Maryland*, 395 U.S. 784, 795 (1969) ("Once it is decided that a particular Bill of Rights guarantee is fundamental to the American scheme of justice, the same constitutional standards apply against both the State and Federal governments."). For example, in adjudicating Fourth Amendment claims against either state or federal actors, courts look to federal standards in evaluating the reasonableness of searches and seizures. *See Elkins v. United States*, 364 U.S. 206, 223-24, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960) ("In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry . . . . The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."); *United States v. Wilson*, 169 F.3d 418, 423 (7th Cir. 1999) ("federal standards apply to the interpretation of the Fourth Amendment"); *United States v. Mitro*, 880 F.2d 1480, 1486 n.7 (1st Cir. Mass. 1989) (refusing to consider Fourth Amendment claim based on probable cause test set forth under Massachusetts law because "[f]ederal law governs the admissibility of evidence in federal criminal trials" (citing

There is also cause for concern that, even if this Court were willing to make the dramatic break from the existing Eighth Amendment jurisprudence suggested by Jacques, such a move would raise constitutional concerns far more troubling than the one it would be meant to address.  In particular, in applying a state-based standard in evaluating Eighth Amendment claims, the Court would effectively be sanctioning and contributing to geographic disparities in application of the federal death penalty.

In his original motion to strike the notice of intent to seek the death penalty, denial of which prompted him to file the motion to reconsider currently before the Court, Jacques argued that the federal death penalty is unconstitutional because geographic disparities in its application show that it operates in an arbitrary and capricious manner.  Def.'s Mot. to Strike, 48-49.  He asserted that "[r]egional bias [] is inimical to a supposedly national penalty that is, theoretically at least, sought and imposed using consistent national standards."  *Id*. at 48.  Quoting comments made by President Clinton during a press conference held on June 28, 2000, Jacques posited that a system in which "what your prosecution is may turn solely on where you committed the crime" is fundamentally unfair.  *Id*. at 49.  He now takes the inconsistent position that the Court should sanction geographic disparities in application of the federal death

---

*United States v. Pforzheimer*, 826 F.2d 200, 204 (2d Cir. 1987)).

penalty.  In response, the Government argues that allowing
geography to play an explicit role in federal capital sentencing
outcomes would "maximize irrational administration of the death
penalty" because "defendants in one state would be executed while
the lives of their equally culpable counterparts would be spared
for no other reason than the fortuity of a state boundary line."
Opp'n to Mot. to Reconsider 4-5, ECF No. 297.

It bears noting that, in addressing Jacques' original motion
to strike the notice of intent based on geographic, racial and
gender-based disparities in the application of the federal death
penalty, the Court denied the motion not because it found that
disparities in capital punishment that result from racial, gender
or geographic discrimination are constitutionally insignificant.
Rather, the Court held that, because Jacques was relying on broad
statistical evidence and not on any proof of discrimination in
his particular case, his claim was foreclosed by the Supreme
Court's ruling in *McCleskey v. Kemp*, 481 U.S. 279 (1987).  Other
courts evaluating claims that the federal death penalty is
unconstitutional because of geographic disparities have also
declined to question the premise that, if a defendant were able
to prove that geographic discrimination had played a role in his
or her death sentence, such a showing would establish a violation
of the Eighth Amendment.  *See United States v. Bin Laden*, 126 F.
Supp. 2d 256, 263 (S.D.N.Y. 2000) ("[B]ecause Defendants have not

12

shown a constitutionally unacceptable risk that geography plays
an inappropriate role in federal capital decision-making with
respect to this particular prosecution, we reject Defendants'
Eighth Amendment claim that the Government's death penalty
notices should be dismissed"); *United States v. Barnes*, 532 F.
Supp. 2d 625 (S.D.N.Y. 2008) (citing *id.*).

Allowing geography to play a role in the determination of
which defendants may face the federal death penalty would be out
of step with the Supreme Court's post-*Furman* capital punishment
jurisprudence and with the statutory scheme that Congress has
devised to comply with the requirements set forth in this
jurisprudence.  Under the Supreme Court's post-*Furman* case law,
to be constitutional, a capital sentencing scheme must "(1)
rationally narrow the class of death-eligible defendants; and (2)
permit a jury to render a reasoned, individualized sentencing
determination *based on a death-eligible defendant's record,
personal characteristics, and  the circumstances of his crime*."
*Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006) (emphasis added)
(citing *Gregg v. Georgia*, 428 U.S. 153 (1976) (joint opinion of
Stewart, Powell, and Stevens, JJ.)).  Under the FDPA, like many
other post-*Furman* capital sentencing schemes, narrowing is
accomplished through the use of eligibility factors which, to be
valid, must "make [the] defendant's conduct 'worse or more
heinous'" than that of other defendants charged with capital

crimes.  *United States v. Williams*, S1 00 Cr. 1008, 2004 U.S. Dist. LEXIS 25644, at *60 (S.D.N.Y. December 22, 2004)) (quoting *States v. Perez*, No. 02 Cr. 7, 2004 U.S. Dist. LEXIS 7500, at *12 (D. Conn. Apr. 29, 2004)).  Determining that certain offenders convicted of death-eligible offenses under federal law would not be eligible for the death penalty simply because of the district in which they were tried -- while others, convicted of the same federal offenses in other districts would be eligible -- would violate the principle that, to be rational, narrowing must be based on the heinousness of the offense.

For the foregoing reasons, the Court cannot conclude that it committed a clear error of law in denying Jacques' motion to strike the notice of intent to seek the death penalty based on his argument that imposition of the federal death penalty is unconstitutional in a state that does not authorize capital punishment as a matter of state law.  The motion to reconsider is **denied.**


Dated at Burlington, in the District of Vermont, this 2nd day of September, 2011.

                                    /s/ William K. Sessions III
                                    William K. Sessions III
                                    U.S. District Court Judge